`

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STACEY L. DRAGGETT,

                Plaintiff,

v.                                            **DECISION AND ORDER**
                                                              12-CV-575S
CAROLYN W. COLVIN,[1]
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

      1.      Plaintiff Stacey Draggett challenges an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act ("the Act").

      2.      On October 25 and 26, 2010, respectively, Draggett filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. She alleged she had been disabled since July 21, 2007, due to the effects of a back injury suffered in a motor vehicle accident, a stroke, and a heart attack. (R. 107.)[2] The applications were denied and, at Draggett's request, a hearing was held before Administrative Law Judge Ronald R. Bosch on October 5, 2011. (R. 18-41.) Draggett appeared in person, with representation, and testified.

      3.      ALJ Bosch considered the case *de novo*, and on November 7, 2011, issued a written decision denying the applications for benefits. (R. 5-17.) Draggett filed a request

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. She is substituted for Michael J. Astrue as the Defendant in this action, under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Citations to the administrative record are designated as "R."

1

for review with the Appeals Council, which denied the request on April 19, 2012. She commenced this civil action on June 19, 2012, challenging the Commissioner's final decision.[3]

4. On February 22 and 23, 2013, respectively, the Commissioner and Draggett each filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The motions were fully briefed on April 8, 2013, at which time this Court took the matter under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is denied, Draggett's motion is granted in part, and denied in part, and this case will be remanded.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[3] The ALJ's May 26, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the

3

> [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also, Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. In this case, the ALJ made the following findings with regard to the five-step process: (1) Draggett had not engaged in substantial gainful activity since her alleged disability onset date of July 21, 2007 (R. 10); (2) her degenerative disc disease of the lubosacral spine with spondylolisthesis of L5 on S1; coronary artery disease, status post myocardial infarction; and obesity are severe impairments within the meaning of the Act (Id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 11); (4) Draggett retains the residual functional capacity ("RFC") to light work, but might have difficulty climbing, stooping, kneeling, crouching or crawling on more than an occasional basis (R. 12); (5) she is unable to perform her past relevant work (R. 13); and (6) jobs exist in substantial number in the national economy that an individual of Draggett's age, education, past relevant experience,

and RFC can perform (R. 53.) Ultimately, the ALJ concluded that Draggett was not under a disability as defined by the Act. (R. 55.)

11. Draggett challenges the determination on the grounds that: (a) ALJ Bosch failed to address probative evidence regarding her cardiovascular impairments, (b) failed to consider the combined effects of her impairments on her RFC, and (c) made a finding as to her credibility that was not supported by substantial evidence. Draggett further contends the Commissioner did not meet his burden of proof at step five of the sequential process.

12. The first point of error, according to Draggett, was the ALJ's determination that her cardiovascular impairments did not meet or medically equal the criteria of Listing 4.02 for chronic heart failure.

The "Listings" define impairments that "would prevent an adult, regardless of [her] age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Sullivan v. Zebley, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). A claimant whose impairment meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995). The claimant bears the burden of establishing that her impairments match or are equal in severity to a Listing. Naegele v. Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006).

The Listings define chronic heart failure as the heart's inability to pump enough oxygenated blood to the body tissues. 20 C.F.R. Part 404, Subpart P, Appendix 1, 4.00D(1). To establish the existence of chronic heart failure, a claimant's "medical history and physical examination should describe characteristic symptoms and signs of pulmonary

or systemic congestion or of limited cardiac output associated with the abnormal findings on appropriate medically acceptable imaging." 4.00D(2)(b). Such symptoms and signs include easy fatigue, weakness, shortness of breath while awake or asleep, cough, chest discomfort at rest or with activity, and arrhythmias resulting in palpitations, lightheadedness, or fainting. 4.00D(2)(b)(i). Listing 4.02 is used to assess impairments relating to "[c]hronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2." Where such symptoms and signs are present, Listing 4.02 will be satisfied only when the record shows that the claimant's impairments are sufficiently severe by satisfying the requirements in paragraphs A and B of the Listing.

Draggett had an occluded left anterior descending coronary artery that was stented in January 2006, and a defibrillator implanted four months later. She contends an electrocardiogram report from September 24, 2008 (R. 318-21.), is sufficient to satisfy paragraphs A and B of the Listing, and that the ALJ erred when he failed to discuss the criteria and find her *per se* disabled.

After acknowledging the 2006 cardiac procedures, ALJ Bosch went on to consider whether, during the claimed period of disability, Draggett's medical history described signs and symptoms of residual cardiac disease. He found, to the contrary, that "treating records depict an individual who has repeatedly denied symptoms of chest pain or shortness of breath during follow up visits despite her continued smoking and overall noncompliance with recommended diet." (R. 11.) Moreover, the ALJ noted that clinical signs of cardiac disease subsequent to 2006 were absent from the reports of her treating sources and a consultative examiner. (R. 12.) In short, the signs described in 4.00D(2) were not present.

6

This finding was supported by substantial evidence.[4]

Nevertheless, Draggett contends the ALJ erred when he failed to discuss her documented left ventricular ejection fraction of 25 percent. (R. 318-21.) While it is true that the paragraph A criteria is met when a claimant can show an ejection fraction of 30 percent or less, there was no need for the ALJ to consider this criteria once he had concluded that the potentially impairing symptoms and signs associated with limited cardiac output were absent from her medical history.

Even assuming the ALJ had erred in his findings with regard to 4.00D(2), such error would be harmless here. For a *per se* disability to exist, the requirements of paragraph B also must be met. There is no record evidence to support such a finding. Draggett relies on paragraph B(3)(d), which involves the "[i]nability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less . . . due to signs attributable to inadequate cerebral perfusion." She points to her medical provider's decision, on September 24, 2008, to perform a pharmacologic stress test, rather than an exercise test, after "patient reported a history of recent [cerebrovascular accident], with residual right-sided weakness." (R. 320.)

Paragraph B(3) is met based on the *results* of an exercise tolerance test. Yet, no such test was performed on September 24, 2008, or at any time after the alleged disability onset date. Moreover, the decision not to perform the test was based on Draggett's recent stroke, not the fact that she had a reduced ejection fraction. Under the plain language of

---

[4] The Court recognizes there is conflicting evidence in this regard. On some visits to Dr. Gorman, Draggett reported shortness of breath during activity, and on other occasions she did not. She did not report shortness of breath while at rest at any time. Under the standards applicable to this review, there is substantial evidence to support the ALJ's finding.

Listing 4.02, the paragraph B limitation must *result from* the paragraph A condition.

Accordingly, the ALJ's finding that Draggett did not meet the Listing for chronic heart failure is supported by substantial evidence.

13. Next, Daggert maintains the ALJ failed to fully develop the administrative record. In particular, she faults the ALJ's failure to request opinions from her treating physicians regarding her ability to perform work-related activities.

It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999); McClaney v. Astrue, 2012 U.S. Dist. LEXIS 123756, at *28-29 (E.D.N.Y. Aug. 10, 2012). Social Security Administration regulations provide that:

> [m]edical reports should include . . . [a] statement about what you can still do despite your impairment(s) . . . . Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete.

20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6). Here, there is no indication that ALJ Bosch made such a request.

Recently, however, the Second Circuit Court of Appeals rejected a claimant's contention that an ALJ's failure to request an RFC assessment from a treating physician necessarily or automatically requires a remand. Tankisi v. Commissioner of Social Security, No. 12-1398-CV, 2013 U.S. App. LEXIS 6545, 2013 WL 1296489 (2d Cir. Apr. 2, 2013). After acknowledging that the plain text of the regulations is neither conditional nor hortatory and "seems to impose on the ALJ a duty to solicit . . . medical opinions," the Circuit Court

went on to reason:

> However, the text indicates that "[m]edical reports *should* include . . . [a] statement about what you can still do despite your impairment," not that they *must* include such statements. Id. (emphasis added). It also indicates that "the lack of the medical source statement will not make the report incomplete." Id. Other regulations also state that a case record "may contain medical opinions." See, e.g., 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (emphasis added). These provisions indicate that the ALJ's conclusions would not be defective if he requested opinions from medical sources and the medical sources refused. Taken more broadly, they suggest remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity. See Moser v. Barnhart, 89 F. App'x 347, 348 (3d Cir.2004); Scherschel v. Barnhart, 72 F. App'x 628, 630 (9th Cir.2003); Ripley v. Chater, 67 F.3d 552, 557 (5th Cir.1995).

Id. at *11-12.[5]

This Court first notes that, while the administrative record in Tankisi did not contain "formal opinions" from treating physicians, a treating source had otherwise assessed Tankisi's limitations. Id. at *12. Similarly, in the only district court decision to apply Tankisi's reasoning to date, the ALJ had given the plaintiff's counsel an opportunity, following the hearing, to submit an RFC assessment from a treating source nurse practitioner. Kunkel v. Comm'r of Soc. Sec., 12-CV-6478CJS, 2013 U.S. Dist. LEXIS 117911, at *38 (W.D.N.Y. Aug. 20, 2013). The district court concluded remand was not required, even though the ALJ failed to request an assessment from a treating physician, noting that the ALJ's RFC was substantially in accord with the nurse practitioner's assessment, and the physician in

---

[5] Just days prior to the Tankisi decision, this Court remanded a Social Security case on the ground the regulations require that, for a record to be complete, an ALJ must *request* an opinion from the claimant's treating physician. The record will not be deemed defective if the physician doesn't comply; what is necessary is that the ALJ *attempt to obtain* opinion evidence. Martello v. Astrue, 12-CV-215S, 2013 U.S. Dist. LEXIS 46574 (W.D.N.Y. Mar. 29, 2013). Tankisi now requires that, where the ALJ fails in his clearly-defined duty, I must not remand on that basis alone, but must first determine whether the record contains sufficient evidence from which an ALJ can assess residual functional capacity.

9

question had treated the plaintiff at the same clinic where she had been treated by the nurse practitioner. Id. at *50-53.

As mentioned above, the medical evidence in this case shows that, after her heart attack, Draggett had a left ventricular ejection fraction of 25 percent. In addition, a CT scan performed after she had undergone back surgery showed degenerative changes at L5-S1 and a spondylolisthesis of L5 on S1. (R. 166.) The medical history includes records from Dr. Egnatchik, who treated Draggett for her spinal condition, and Drs. Gorman and Carreras-Suchanick, her general physicians. These treating sources periodically checked Draggett's blood pressure, reflexes, motor strength, straight leg raising, and heart rate, which typically fell within a normal range. Their notes do not, however, discuss her ability to perform the strength demands identified in Social Security policy interpretation ruling SSR 96-8p: sitting, standing, walking, lifting, carrying, pushing, and pulling." 1996 SSR LEXIS 5, at *2. Nor do they discuss non-exertional functions, such as climbing, stooping, and kneeling.

In October 2008 Dr. Gorman noted that Draggett "obviously" had not returned to work as a CNA, and "still trying to sort out what her best options are disability-wise although we do expect full recovery to occur." (R. 205.) Three years later, in 2011, Dr. Suchanick identified Draggett's ongoing medical problems as including CVA with right sided weakness. (R. 373, 377, 381 ("subjective weakness to left side").) She noted, in June 2011, that she advised Draggett to seek an opinion from her back specialist regarding any limitations relating to her spine, and stated that "medically she [otherwise] has some restrictions," but did not identify what they were or their severity. (R. 361.) Dr. Suchanick went on to suggest that lifestyle changes could have a positive impact on Draggett's

10

restrictions, but again did not state how much improvement or in what areas. (Id.)

Dr. Egnatchik opined that, from May through October 2008, Draggett had a "total temporary disability." (R. 169, 171-72.) In March 2009, Dr. Egnatchik noted Draggett's ongoing back pain and post-stroke weakness. He recommended conservative care with regard to her spine because of "other medical complications and conditions." He did not identify or discuss these additional concerns, nor did he note an improvement in her back pain thereafter. (R. 165-66.)

To the extent the treating physicians' references to "medical restrictions," "medical complications," or "temporary disability" can be construed as opinions at all, they are so vague as to be meaningless. Absent competent opinion evidence, the type and severity of Draggett's limitations "is left to the ALJ's sheer speculation." Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013). Here, ALJ Bosch concluded that:

> although the claimant's history of back pathology and cardiac disease, especially when considered in conjunction with her obesity . . . may well cause her some pain and preclude her from engaging in activities requiring heavy lifting and carrying, the overall thrust of the . . . evidence before me is not consistent with an individual experiencing symptoms so overwhelming or debilitating as to impose disabling functional limitations on her.

(R. 13.)

It is well-settled that, in analyzing a treating physician's report, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." McBrayer v. Secretary of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983); see also Balsamo v. Chater, 142 F.3d 75, 80-81 (2d Cir. 1998) (citing McBrayer). Like the ALJ in Balsamo v. Chater, ALJ Bosch did not cite to any *physician's opinion* in support of his conclusion that Draggett is not disabled. 142 F.3d at 81. More significantly, the record here

11

does not contain any physician's opinion regarding her functional capacity. When ALJ Bosch determined that an absence of symptoms typically associated with functionally limiting spinal and/or cardiac disorders was not consistent with a finding of disability (R. 12), he made an improper medical determination. An ALJ is free to choose between properly submitted medical opinions, but cannot substitute his own expertise for that of a physician. Balsamo, 142 F.3d at 81.

Though it is evident the ALJ thoroughly reviewed the medical records in this case, he failed to fully develop the record. His decision to render a determination on disability without attempting to obtain a competent medical opinion regarding Draggett's functional limitations was error. Accordingly, the case will be remanded for the ALJ to attempt to obtain such opinions, through counsel or directly.

14. Draggett additionally faults the RFC assessment on the ground the ALJ's credibility assessment is not supported by substantial evidence. Specifically, Draggett maintains the assessment was based on the ALJ's own improper medical determination, and the ALJ also failed to consider her excellent work history and her desire and attempt to return to work. This Court agrees that both arguments support remand but, in light of the extensive discussion above, only the second requires discussion.

"A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) (citing Singletary v. Sec'y of Health, Educ. and Welfare, 623 F.2d 217, 219 (2d Cir. 1980)); see also, Rosier v. Astrue, No. 08-CV-434S, 2009 U.S. Dist. LEXIS 84003, at *8 (W.D.N.Y. Sept. 15, 2009); Maggio v. Heckler, 588 F. Supp. 1243, 1246 (W.D.N.Y. 1984); Patterson v. Chater, 978 F. Supp. 514, 519 (S.D.N.Y. 1997); Nelson v.

Barnhardt, No. 01-Civ-3671, 2003 U.S. Dist. LEXIS 6012 (S.D.N.Y. April 10, 2003). This is because a claimant with an established history of employment is unlikely to be "feigning disability." Patterson, 978 F. Supp. at 519. As courts in this Circuit have recognized, the failure to consider a claimant's work history in an evaluation of his or her credibility is "'contrary' to the law in this circuit and the SSA's rulings." Pena v. Barnhart, No. 01 Civ. 502, 2002 U.S. Dist. LEXIS 21427, at *37 (S.D.N.Y. Oct. 29, 2002) (quoting Montes-Ruiz v. Chater, 129 F.3d 114 (Table) (2d Cir. 1997)).

At the time of Draggett's motor vehicle accident, after which she claimed disability, she was 29 years old. Until that time, she had worked steadily for nine years, predominantly as a certified nurse's aide. She attempted once to return to her prior position, and discussed with her doctors her desire to return to work. Based on these facts, her reports of pain and other symptoms may be deserving of greater deference than the ALJ ascribed to them. Pena, 2002 U.S. Dist. LEXIS 21427, at *37. Thus, the matter will be remanded so that the ALJ may make findings as to Draggett's credibility in light of competent medical opinions, if they can be obtained, and her uninterrupted work history.

15. Finally, Draggett contends the Commissioner failed to meet his burden at step five, because he failed to consult a vocational expert regarding the impact of her non-exertional limitations on the occupational base of light work. Given that the ALJ's disability or RFC determination may change on remand, there is no need to consider this issue now.

\*\*\*\*

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED in part and DENIED in part;

FURTHER, that the decision of the ALJ is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: September 27, 2013
       Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                              Chief Judge
                                        United States District Court